**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22507-CIV-ALTONAGA/REID**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **AIMA BUSINESS AND MEDICAL SUPPORT,** | ) |
| **LLC** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT AIMA BUSINESS AND MEDICAL**
**SUPPORT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................................... 2

   I.    The Medicare Program and Medical Necessity ................................................................. 2

   II.   AIMA and Its Relationship with Selecta ........................................................................... 3

LEGAL STANDARD ...................................................................................................................... 3

ARGUMENT ................................................................................................................................... 4

   I.    Rule 9(b) Prohibits Improper Group Pleading .................................................................. 4

   II.   The Complaint Fails to State a Claim for Presentation of False Claims ........................... 5

      a.    The Complaint Does Not Identify With Particularity a False Claim Submitted to and Paid by the Government.......................................................................................................... 6

      b.    The Complaint Does Not Adequately Plead Falsity ....................................................... 8

      c.    The Complaint Does Not Properly Allege Scienter ...................................................... 11

   III.  The Complaint Fails to State a Claim for Causing to Be Made or Used False Records or Statements ...................................................................................................................... 14

      a.    The Complaint Does Not Plead Falsity With Specificity ............................................. 14

      b.    The Complaint Does Not Properly Allege Scienter ...................................................... 15

   IV.  The FCA Claims Similarly Fail Under the Plausibility Standard ................................... 15

   V.   The Complaint Fails to State a Claim for Unjust Enrichment or Payment by Mistake .... 16

CONCLUSION .............................................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 2, 3, 15

*Barys ex rel. United States v. Vitas Healthcare Corp.*, No. 04-21431-CIV, 2007 WL 2310862
(S.D. Fla. July 25, 2007) ..................................................................................................... 6, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 3

*Britton ex rel. U.S. v. Lincare, Inc.*, 634 F. App'x 238 (11th Cir. 2015) ....................................... 6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ...................... 4

*Caldwell v. Compass Entm't Grp. LLC*, No. 6:14-cv-1701-Orl-41TBS, 2016 WL 7136181 (M.D.
Fla. Feb. 4, 2016) ................................................................................................................... 16

*Carrel v. Aids Healthcare Found., Inc.*, 898 F.3d 1267 (11th Cir. 2018) ..................................... 6

*Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) ........................................................ 4, 8

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ........................... 10

*Harvey v. Fla. Health Scis. Ctr., Inc.*, 728 F. App'x 937 (11th Cir. 2018) ................................. 16

*Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318 (11th Cir. 2009) ................................................ 6

*Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321 (M.D. Fla. 2019) ............................................. 17

*U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006) .......................................... 4, 6, 7

*U.S. ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783 (11th Cir. Jan. 24, 2018) ............. 8

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002) ................... 3, 4, 6, 7, 8

*U.S. ex rel. Grant v. United Airlines, Inc.*, 912 F. 3d 190 (4th Cir. 2018) .................................. 14

*U.S. ex rel. John Doe v. Health First, Inc.*, Case No. 6:14-cv-501-Orl-37DAB, 2016 WL
3959343 (M.D. Fla. 2016) ....................................................................................................... 4

*U.S. ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ......................................... 4

*U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693 (11th Cir. 2014) ................. 7

*U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F.Supp.3d 1362 (C.D.Cal.2014) ........................... 11

*U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F.Supp.2d 1329 (M.D. Ga. 2011) ..... 8

*U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148 (11th Cir. 2017) ......................... 5, 11

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 335 F.3d 370 (5th Cir. 2004) ............................. 8

*U.S. ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d  (S.D. Ohio 2000) ............................................. 8

*U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300 (11th Cir. 2010) ........................................ 4

*U.S. ex rel. Schiff v. Norman*, No. 8:15-cv-1506, 2018 WL 264253 (M.D. Fla. Jan. 2, 2018) ...... 4

*U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) ........................................................ 11

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F. 3d 370 (4th Cir. 2008).................... 8, 9

*U.S. ex rel Silva v. VICI Marketing, LLC*, 361 F. Supp. 3d 1245 (M.D. Fla. 2019).............. 16, 17

*U.S. v. Prabhu*, 442 F. Supp. 2d 1008 (D. Utah 2006) .................................................................. 10

*Urquilla-Diaz v. Kaplan*, 780 F. 3d 1039 (11th Cir. 2015) .......................................................... 11

*Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329 (11th Cir. 2012) ..................................................... 16

*Weiland v. Palm Beach County Sherriff's Office*, 792 F. 3d 1313 (11th Cir. 2015) ...................... 4

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ......................................................................................................... 1, 5

31 U.S.C. § 3729(a)(1)(B) ................................................................................................. 1, 13, 14

31 U.S.C. § 3729(b)(1) ............................................................................................................... 14

31 U.S.C. § 3729(b)(1)(A) .................................................................................................... 11, 13

31 U.S.C. § 3729(b)(2) ................................................................................................................. 6

42 U.S.C. § 1395c ......................................................................................................................... 2

42 U.S.C. § 1395y(a)(1)(A) .......................................................................................................... 2

42 U.S.C. §§ 1395j–1395w............................................................................................................ 2

**Rules**

Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).................................................... 1, 3, 15

Rule 9 ............................................................................................................................................ 6

Rule 9(b) ................................................................................................................ 3, 4, 5, 6, 15

Defendant AIMA Business and Medical Support, LLC ("AIMA") respectfully moves to dismiss Plaintiff United States of America's ("Plaintiff") Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), and states as follows.

## INTRODUCTION

This case arises out of the alleged actions of Excellent Laboratories Inc. d/b/a Selecta Laboratory ("Selecta"), a laboratory that provided genetic testing services to patients, some of whom were insured through Medicare. According to the government, certain of the genetic tests that **Selecta** provided were not medically necessary, and therefore billing for those claims constitutes a violation of the federal False Claims Act ("FCA"). But the government does not name Selecta in this case. Instead, the Complaint attempts to lay the blame for the supposed false claims on AIMA, an entirely separate company that solely provided billing services to Selecta and received a single-digit fraction of the proceeds that Selecta received. The government would have the Court believe that AIMA, which had only recently entered the medical billing business, advised Selecta, an established, certified laboratory, in how to defraud the government by submitting claims for medically unnecessary genetic testing. In so doing, the United States demonstrates the folly of the decision to pursue AIMA for these purported violations, as the Complaint fails to properly allege AIMA's participation in the alleged scheme.

The Complaint sets forth four counts, all of which are deficient and all of which must be dismissed. Count I alleges a violation of 31 U.S.C. § 3729(a)(1)(A), which generally prohibits the knowing submission of a false or fraudulent claim for payment. Specifically, the United States posits that AIMA violated this provision by knowingly billing for "unnecessary" genetic testing on behalf of Selecta. Count II claims a violation of 31 U.S.C. § 3729(a)(1)(B), which prohibits the making or use of a false record or statement that is material to a false claim. The government does

not allege that AIMA itself made false statements, but instead states that AIMA caused Selecta to provide some unspecified "false records or statements" to Medicare. Count III alleges that AIMA was unjustly enriched by obtaining funds from Medicare to which it was not entitled. Count IV alleges a claim for payment by mistake, arguing that Medicare paid for tests that were not medically necessary based on undefined "mistaken understandings of fact."

## FACTUAL BACKGROUND[1]

### I.     The Medicare Program and Medical Necessity

Medicare is a federally funded health insurance program. *See* 42 U.S.C. § 1395c, *et seq*. As relevant here, Medicare Part B covers medical and other health services, and pays health care providers directly according to a fee-for-service schedule set by the Centers for Medicare and Medicaid Services ("CMS"). *See* 42 U.S.C. §§ 1395j–1395w-. To assist in the administration of Part B, CMS contracts with Medicare Administrative Contractors ("MACs") for services including processing payment of Part B claims to providers. Medicare Part C is also known as the Medicare Advantage ("MA") program, and is a private alternative to traditional Medicare in which the government contracts with private health insurers called Medicare Advantage Organizations ("MAOs") to provide beneficiaries with the coverage they otherwise would receive under traditional Medicare. CMS pays MA plans a set, monthly payment regardless of the number of services uses or provided, referred to as "capitated" payments. Regardless of whether a beneficiary is insured under Part B or Part C, Medicare will reimburse only for services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." *See* 42 U.S.C. § 1395y(a)(1)(A). It is ultimately the responsibility of the service provider to ensure that the services provided and billed to Medicare are medically

---

[1] The facts of alleged in the Complaint, many of which AIMA contests, are accepted as true only for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

necessary, appropriate, and adequately documented. *See id.* at § 1395y.

## II.   AIMA and Its Relationship with Selecta

Selecta was a Florida laboratory that performed and billed for medical testing, including but not limited to genetic tests. Compl. ¶¶ 62-63. Selecta was incorporated in Florida in 2014 by Mario Cuervo, an individual with a long history in the healthcare and laboratory spaces who was wholly separate from AIMA. Selecta opted to work with AIMA, a business process outsourcing company that provides assistance to healthcare businesses' commercial operations, including through providing billing services. *Id.* ¶¶ 73, 75. In mid-2018, AIMA began to provide Selecta with services including processing and billing medical insurance claims, verifying patient insurance eligibility, and handling claim follow-ups, appeals, and resubmissions. *Id.* ¶¶ 77, 80-81. AIMA did not provide Selecta with broader medical consulting services, and did not interact with providers or patients. AIMA had no role in originating patients for Selecta, connecting patients to providers, communicating with providers, creating or altering medical documentation, or providing dating for claims. The Complaint does not allege as much, because the government recognizes that AIMA's role with Selecta was limited to billing and follow-up on claims. AIMA's relationship with Selecta terminated in late 2019. *Id.* ¶¶ 80-81.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 8(a) and Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face . . . [A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (cleaned up). Conclusory allegations of fact are not accepted as true, and complaints must be dismissed when the claims are "supported by mere conclusory statements." *Iqbal*, 556 U.S. 678.

FCA claims in particular are subject to the heightened pleading requirements of Rule 9(b). *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1309-12 (11th Cir. 2002). An FCA complaint fails to satisfy Rule 9(b) unless it sets forth "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Id.* at 1310 (internal quotations and citation omitted). "When an FCA claim is at issue, district courts must disregard assertions of law and conclusory statements of fact regarding a defendant's alleged fraudulent submissions to the Government." *U.S. ex rel. John Doe v. Health First, Inc.*, Case No. 6:14-cv-501-Orl-37DAB, 2016 WL 3959343, *4 (M.D. Fla. 2016) (citation omitted). The Eleventh Circuit repeatedly has held that dismissal is "required" if an FCA action does not satisfy Rule 9(b). *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006); *see also, e.g., U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300 (11th Cir. 2010); *Clausen*, 290 F.3d at 1309-12; *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## ARGUMENT

### I.     Rule 9(b) Prohibits Improper Group Pleading

Rule 9(b) prohibits a plaintiff from lumping multiple "defendants" together in allegations of fraud. *See, e.g.*, *Weiland v. Palm Beach County Sheriff's Office*, 792 F. 3d 1313, 1323 (11th Cir. 2015) (setting forth the types of impermissible "shotgun pleadings," including complaints that assert multiple claims against multiple defendants without specifying who is responsible for which actions); *U.S. ex rel. Schiff v. Norman*, No. 8:15-cv-1506, 2018 WL 264253, *2-3 (M.D. Fla. Jan. 2, 2018) (dismissing complaint where relator failed to describe the role of each defendant and instead alleged against defendants collectively). A complaint must "inform each defendant separately of the allegations surrounding [the defendant's] participation in the fraud" and "at a minimum identify the role of each defendant in the alleged fraudulent scheme." *U.S. ex rel. Lee v.*

*Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (dismissing under Rule 9(b) where defendants were "lumped together" because "in a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud").

Here, although the United States does not name Selecta as a defendant, it nonetheless inappropriately lumps together AIMA and Selecta's alleged actions. The section of the Complaint subtitled "AIMA's Involvement" is replete with allegations of supposedly improper conduct on behalf of Selecta generally, as well as that of specific Selecta employees. It is impossible to parse through the Complaint and determine what actions or statements form the basis for the government's claim of fraudulent submissions of false claims, and whether the United States believes that AIMA or Selecta is responsible for those actions or statements. The Complaint violates Rule 9(b)'s requirement that AIMA must be put on notice of the nature of its participation in the supposed fraud, and cannot survive.

## II.     The Complaint Fails to State a Claim for Presentation of False Claims

Count I of the United States' Complaint alleges a violation of 31 U.S.C. § 3729(a)(1)(A), which creates a cause of action against any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." To establish a cause of action under this provision, a plaintiff must prove (1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with knowledge that the claim was false. *U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017). Here, the Complaint fails to identify with particularity any false claim actually submitted and paid by the government, to properly allege that the claims at issue were false, and to adequately plead the requisite state of mind.

### a. The Complaint Does Not Identify With Particularity a False Claim Submitted to and Paid by the Government

A "claim" under the FCA is defined as a "request or demand . . . for money or property." 31 U.S.C. § 3729(b)(2). The "submission of a claim is . . . the *sine qua non* of a False Claims Act violation." *Clausen*, 290 F.3d at 1311. Rule 9(b) and Eleventh Circuit precedent require that a relator plead with particularity "that the United States actually paid a false claim," identified with specificity. *Britton ex rel. U.S. v. Lincare, Inc.*, 634 F. App'x 238, 241 (11th Cir. 2015). "The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006). A relator's failure to identify specific claims actually submitted to the government requires dismissal of an FCA complaint. *See, e.g., Clausen*, 290 F.3d at 1315; *Carrel v. Aids Healthcare Found., Inc.*, 898 F.3d 1267, 1277 (11th Cir. 2018); *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1325-26 (11th Cir. 2009*)*; *Barys ex rel. United States v. Vitas Healthcare Corp.*, No. 04-21431-CIV, 2007 WL 2310862, at *7 (S.D. Fla. July 25, 2007).

In *Clausen*, the Eleventh Circuit affirmed dismissal for failure to plead the details of a claim submitted to the government with particularity, even though the complaint provided the initials of patients, specific dates of treatment, identification of the specific claim forms used, and the CPT codes used on those claim forms. For example, the complaint in *Clausen* alleged that "LabCorp performed an unnecessary Glucose test on patient H.L. on April 15, 1997, and that a claim for the test was submitted 'on April 15 or within a few days thereafter' via electronic form HCFA 1500, with CPT code 82947." 290 F.3d at 1316. The Eleventh Circuit held that even this was not sufficient to state a FCA claim, affirming the trial court's grant of the motion to dismiss because "no copies of a single actual bill or claim or payment were provided." *Id.* at 1306. Similarly, in *Atkins*, the Eleventh Circuit affirmed the dismissal of the relator's FCA claim because

he did not provide sufficient details of specific claims, even though he cited "particular patients, dates and corresponding medical records." 470 F.3d at 1359.

Here, although the Complaint appears to set forth details of specific claims, the government does not attach copies of any actually submitted bills or claims for payment, as the Eleventh Circuit has said is necessary. *See Clausen*, 290 F.3d at 1306. The Complaint also completely fails to describe the billing process that AIMA supposedly undertook. *See generally* Compl. It does not elucidate how billing codes are entered, how claims are prepared, how claims are transmitted to the government, or how the government ultimately paid Selecta. *See generally id.* There is no suggestion as to who at AIMA, for example, selected billing codes and how this unnamed person knew that those codes were allegedly false. *See generally id.* This fall well short of providing the "indicia of reliability" necessary for the court to infer that the supposedly fraudulent claims were actually submitted. *See Clausen*, 290 F.3d at 1311.

Moreover, the United States, acting alone without a relator, cannot avail itself of the lone, narrow exception to the requirement of identifying with particularity specific fraudulent claims, which is set forth in the unpublished opinion *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc*. 591 F. App'x 693, 704-05 (11th Cir. 2014). The government does not and could not claim to have the personal knowledge of Medicare billing that the relator in *Mastej* had by virtue of having "direct information about . . . billings," including being "in the very meetings where Medicare patients and the submission of claims to Medicare were discussed," and where, in particular, "every patient was reviewed, including how the services were being billed." *Id.* at 708. The United States cannot allege that it had a representative in any meetings in which AIMA and Selecta discussed submission of bills to Medicare or Medicaid, or to know how services were being billed, or to have any other firsthand knowledge giving the allegations the indicia of reliability required by *Clausen*.

7

*See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013-14 (11th Cir. 2005); *see also U.S. ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783, 789 (11th Cir. Jan. 24, 2018).

Because it has not identified with sufficient particularity specific claims actually submitted to the government, Plaintiff is therefore left with the bare-bones allegation that Selecta—not AIMA—"targeted" Medicare patients, and that Selecta's Medicare billing for genetic testing increased in 2018. *See* Compl. ¶¶ 64, 69. This amounts to nothing more than the suggestion that false claims "must have been submitted, were likely submitted or should have been submitted" to the government, which the Eleventh Circuit has explicitly held to be insufficient. *See, e.g.*, *Clausen*, 290 F.3d at 1311. As in *Clausen* and its progeny, the Complaint must be dismissed.

b. *The Complaint Does Not Adequately Plead Falsity*

Even if the Complaint adequately alleged submission of a claim, Plaintiff also fails to properly plead that any claims submitted for payment were actually false. In this context, a complaint must allege objective falsity. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F. 3d 370, 376 (4th Cir. 2008) ("[T]he statement or conduct alleged must represent an objective falsehood."); *U.S. ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 61, 625-26 (S.D. Ohio 2000) (expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false.); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 335 F.3d 370, 376 (5th Cir. 2004); *U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F.Supp.2d 1329, 1339 (M.D. Ga. 2011).

The government points to what it believes is an increase in Selecta billing Medicare for genetic testing, and posits that this was a result of submitting fraudulent claims. But this conclusion rests on faulty and unfounded assumptions. The Complaint places emphasis on what it contends was AIMA's desire to maximize reimbursements by Medicare. This ignores the crucial point that there is nothing fraudulent about an entity like Selecta or AIMA operating as a for-profit business

seeking to maximize **allowable** reimbursements by Medicare. Without adequate allegations that the claims at issue were false or improper, the suggestion that AIMA was motivated by profit is irrelevant.

The United States also repeatedly points to AIMA's reliance on local coverage determinations ("LCD") issued by MACs—entities that CMS chooses and contracts with for the express purpose of assisting in the administration of the Medicare program. The government surely does not contend that it is improper to rely on LCDs issued by its own contractors to provide direction as to "whether or not a particular item or service is covered." *See* Compl. ¶ 35. To the contrary, Medicare providers and billers are expected to rely on LCDs for guidance. Nowhere does the Complaint allege that AIMA relied on the LCDs to advise Selecta to offer patients certain tests **regardless** of medical necessity, because AIMA did not engage in this practice. *See generally id.* In fact, the Complaint supports the opposite conclusion, quoting from an email where AIMA recommended that Selecta should "request physicians to order breast and ovarian panel **if possible**."[2] *See id.* ¶ 93 (emphasis added). There is not enough in the Complaint to support the inferential leaps the government would ask the Court to make to conclude that AIMA's conduct led to the submission of false claims.

At the heart of the Complaint is the allegation that the genetic testing Selecta provided was medically unnecessary. However, that allegation is merely an uninformed opinion, wholly lacking in detail and insufficient to support a claim under § 3729(a)(1)(A). There are no allegations to show that the services were objectively unnecessary. *See, e.g., Kellogg Brown & Root, Inc.*, 525

---

[2] To the extent the Complaint alleges that AIMA advised Selecta that maximum reimbursement was "guaranteed" for certain LCD codes, this is also insufficient. *See* Compl. ¶ 87. Read rationally, the email at issue says that Selecta could maximize its reimbursements where a patient "has a personal history of cancer" and Selecta provided the testing indicated by the LCD. *See id.* More fundamentally, even if AIMA were incorrect that reimbursement was "guaranteed" for these tests, there is nothing fraudulent about making such an erroneous statement. It is a bridge too far to conclude that this communication represents a suggestion by AIMA to Selecta to falsify the medical necessity of such tests to "guarantee" reimbursement.

F.3d at 377 (reasoning that a relator's "subjective interpretation" regarding the defendant's duties did not rise to the requisite level of falsity); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) ("Expressions of opinion are not actionable as fraud[.]"); *U.S. v. Prabhu*, 442 F. Supp. 2d 1008, 1032 (D. Utah 2006) (rejecting FCA claims based on a "medically unnecessary" theory where the plaintiff failed to articulate an objective standard against which to gauge falsity).

Instead of providing an objective standard by which to determine that the tests were not medically necessary, the government attempts to rely on the fact that certain claims for genetic testing were rejected by Medicare. This does not carry the day. In order to arrive at the conclusion that the claims at issue were false, the Court would have to engage in a series of unfounded logical leaps—that because Medicare rejected some claims for genetic testing as not medically necessary (which is inherently an individualized determination), every other claim for genetic testing for every other Selecta patient (regardless of the supporting documentation or purpose for the testing) must therefore be false. The Complaint alleges no facts to allow for such an unsupported inference, and it cannot serve as the basis for establishing the falsity element of an FCA claim. *See, e.g.*, *Barys*, 2007 WL 2310862 at *4 (plaintiffs attached detailed information about patients and claims for hospice care, but court nonetheless dismissed the complaint, finding no support for the contention that the claims submitted were actually fraudulent).

The government further contends that the claims were medically unnecessary because patients were not properly evaluated by a physician for medical necessity prior to undergoing the genetic testing. In support of this claim, Plaintiff alleges in conclusory fashion that physicians that ordered genetic testing for certain Medicare beneficiaries "did not have a treatment relationship" with those beneficiaries. *See* Compl. at Section IV. But this also does not establish that the claims

submitted were not medically necessary. Merely because these patients did not previously have an established treating relationship with a particular physician does not imply that the ordering doctor did not perform any examination of the patient or their medical records and arrive at the independent conclusion that the testing was medically necessary as defined by Medicare, and the Complaint does not allege as much.

c. *The Complaint Does Not Properly Allege Scienter*

The Supreme Court recently explained that "[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023). Thus, establishing scienter under the FCA requires proof that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). Mistakes or mere negligence do not create false claims act liability. *Urquilla-Diaz v. Kaplan*, 780 F. 3d 1039, 1058 (11th Cir. 2015). "Congress did not intend to turn the False Claims Act, a law designed to punish and deter fraud, into a vehicle either punishing honest mistakes or incorrect claims submitted through mere negligence or imposing a burdensome obligation on government contractors[.]" *U.S. ex rel. Phalp*, 116 F. Supp. 3d at 1358 (quoting *Urquilla–Diaz*, 780 F.3d at 1058) (internal citations and quotations omitted). It is not enough to allege that AIMA might have known that Selecta's patient recruitment or laboratory test selection practices may have been stretching the limits of best practices for laboratories; instead, the government must point to facts that show that AIMA knew or should have known that those practices rendered the claims they submitted on Selecta's behalf false. *See id.* (citing *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F.Supp.3d 1362, 1405 (C.D.Cal.2014)).

The Complaint sets forth two theories for AIMA's purported knowledge of the alleged lack of medical necessity of the genetic testing Selecta provided. First, the government posits that AIMA knew that the tests were not ordered by a treating physician. This theory rests entirely on a single email that the government paints as AIMA advising Selecta on how to falsify medical records, but the email simply does not support that conclusion. *See* Compl. ¶ 127. The Complaint misleadingly omits portions of the email chain, including the initiating email from Selecta which makes clear that AIMA was merely attempting to respond to a question from its customer. Further, the government's interpretation of this communication is not dispositive. From AIMA's perspective, there were multiple legitimate reasons that its client may have been asking for clarification about workflows. What is more, subject to its most rational reading, the email shows AIMA offering its opinion on ways Selecta can **comply** with the medical necessity requirements and properly document claims to **avoid** illegality, not falsify records. *See id.*

But for this email, the Complaint merely contains the allegations that AIMA—in some unpled way—knew that Selecta recruited patients through telemarketing calls and that the physicians signing the medical records or ordering the tests were not the beneficiaries' treating physicians. The government states that Selecta discussed these methods with AIMA, but fails to plead with the requisite particularity who at AIMA had these discussions, whether they occurred via email or some other method, and whether there is any record of such discussions occurring. These unsupported allegations purporting to demonstrate AIMA's knowledge of Selecta's purported scheme should not be credited.

Indeed, what is actually present in the Complaint is wholly insufficient to establish that AIMA had any knowledge of deficiencies in the claims at issue. The Complaint does not allege that AIMA had any involvement in recruiting patients, ordering tests, collecting samples, or

interacting with physicians. It does not suggest that AIMA was aware of what Selecta said to any particular patient or provider. It does not allege that AIMA changed any bills, medical records, or documentation it received from Selecta. Instead, as pled, AIMA relied in good faith on the documentation from Selecta, including orders for tests signed and dated by physicians. There was no reason for AIMA to question the veracity or compliance of the documentation Selecta provided, as Selecta was an established, certified laboratory owned by an individual with an extensive healthcare background. In reliance on the documentation Selecta provided, AIMA then submitted claims, which it understood to represent medically necessary tests properly ordered by a treating physician. These allegations do not rise to the level necessary to establish that AIMA acted with anything more than, at best, mere negligence in submitting claims on behalf of Selecta.

Second, the Complaint alleges that AIMA knew that Selecta's claims for reimbursement were sometimes rejected or denied. Although imprecisely pled, it appears that the government suggests that the rejection or denial of prior claims for genetic testing should have put AIMA on notice that the claims were false or fraudulent. This is too attenuated an inference and is not supported by the Complaint. As Plaintiff agrees, determining whether genetic testing is medically necessary is an individualized determination that depends on the particular circumstances for each beneficiary. It does not follow that because claims for genetic testing were rejected in the past, that all future claims for such testing would be rejected in the future. It especially does not follow that past claim rejections suggests that those claims were falsified in some way. Further, the fact that AIMA assisted in uploading additional documentation in support of the denied claims also does not imply that AIMA had any knowledge that the claims were fraudulent, and only demonstrates AIMA performing part of the role Selecta hired AIMA to perform in rectifying denied claims

13

where possible. This theory also fails to establish the necessary frame of mind to find AIMA liable under the FCA.

### III.   The Complaint Fails to State a Claim for Causing to Be Made or Used False Records or Statements

Count II of the Complaint alleges a violation of 31 U.S.C. § 3729(a)(1)(B), which creates a cause of action against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." To state a claim under this provision, a plaintiff must prove that (1) the defendant made, or caused to be made, a false statement, (2) the defendant knew the statement to be false, and (3) the statement was material to the false claim. *Id.*

#### a.   The Complaint Does Not Plead Falsity With Specificity

The Complaint fails to provide any specifics regarding the allegedly false statements underlying this claim. In fact, it is impossible to determine on the face of the Complaint what records were supposedly false, or what false statements AIMA made to the government. At best, the Complaint alleges that "[b]y virtue of AIMA's actions and assistance, Selecta provided false records and statements to the Medicare program, including false representations in its claims and supporting records indicating that the genetic tests were medically necessary for the diagnosis or treatment of an illness or injury, when I fact those claims were not medically necessary." *See* Compl. ¶ 171. This does not satisfy the requirements of Rule 9(b). The United States fails to state who made the false statements, who supposedly falsified the records, when the statements were made, how the representations were falsified, or (importantly), how AIMA was involved in the alleged falsification. For this reason, Count II cannot survive.

Moreover, 31 U.S.C. § 3729(a)(1)(B) is only violated when a false claim is submitted to the government. As explained previously, the Complaint does not adequately allege submission of

a false claim. Failure to establish submission of a false claim regarding an alleged violation of Section (a)(1)(A) is similarly fatal to the alleged violation of Section (a)(1)(B), and Count II should be dismissed. *See, e.g.*, *U.S. ex rel. Grant v. United Airlines, Inc.*, 912 F. 3d 190, 199-200 (4th Cir. 2018).

> b. *The Complaint Does Not Properly Allege Scienter*

Count II of the SAC fails to adequately plead the scienter requirement of 31 U.S.C. § 3729(a)(1)(B), which requires the creation or use of a false, material record or statement to have been done "knowingly." As discussed regarding Count I, "knowingly" is defined as actual knowledge, or acting with deliberate ignorance or reckless disregard of the truth or falsity of the relevant information. 31 U.S.C. § 3729(b)(1). The Complaint sets forth no unique allegations relating to AIMA's knowledge with respect to this claim, and therefore it fails to establish scienter for the same reasons set forth above.

**IV.    The FCA Claims Similarly Fail Under the Plausibility Standard**

This Motion primarily discusses the government's FCA claims through the lens of the heightened pleading standard set forth in Fed. R. Civ. P. 9(b). However, these claims also fail under the standard of Fed. R. Civ. P. 8(a), requiring a complaint to plead facts such that there is a plausible inference of wrongdoing.

It is not plausible that AIMA, a billing company managed in the United Kingdom, would engage in a scheme whereby it advised an established, experienced US-based laboratory as to how to engage in a scheme to defraud the United States government. For this claim to be plausible, the Court must first be persuaded that AIMA was knowledgeable enough about the clinical requirements for ordering specific genetic testing to advise Selecta on how to falsify claims. The Court must also believe that AIMA, which had no role in originating patients, contacting patients,

working with providers, ordering tests, or creating medical documentation, somehow participated in a scheme that, as alleged, intimately involved physicians and falsified medical documentation.

Further, it is also not plausible to believe that AIMA somehow knew that Selecta engaged in the purported fraud and willingly participated in it. The Court must think that AIMA stood to gain enough for the risk of violating the FCA—including financial penalties, reputational harm in a new segment of AIMA's business, and potential debarment from billing Medicare—to be worth its "reward." This is already an implausible conclusion, made even more unlikely because the Complaint contains minimal allegations about AIMA's financial relationship with Selecta, and does not plead that AIMA's payments were in any way directly tied to the amount that Selecta received from the government. *See* Compl. ¶¶ 150-51. There is simply insufficient factual content in the Complaint to allow the Court to "infer more than the mere possibility of misconduct," and the FCA claims fail under the Rule 8(a) standard as well. *See Iqbal*, 566 U.S. at 679.

## V.     The Complaint Fails to State a Claim for Unjust Enrichment or Payment by Mistake

The Complaint asserts common-law claims for unjust enrichment and payment by mistake against AIMA. The bare-bones claims are not properly pled and must be dismissed. In support of its unjust enrichment claim, the United States contends that "as a result of AIMA's actions," the government paid for genetic testing that was not medically necessary, resulting in some unpled way in AIMA's enrichment. *See* Compl. ¶¶ 177-179. With respect to its payment by mistake claim, the government states that it paid for unnecessary tests "based on mistaken understandings of fact." *See id.* at ¶¶ 180-183. There are no further details or facts supporting either count. The Complaint does not specify what actions AIMA supposedly took that form the bases for these claims, and does not identify what facts the government purportedly misunderstood. *See id.* at ¶¶ 177-183. Without more, these claims cannot survive.

16

Under Florida law, the elements of a claim for unjust enrichment are "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). "As to the first element, the plaintiff must show it 'directly conferred' a benefit on the defendant." *Harvey v. Fla. Health Scis. Ctr., Inc.*, 728 F. App'x 937, 946 (11th Cir. 2018). Accordingly, "[i]t is not enough to show that the defendant obtained a benefit and that the plaintiff was in some roundabout way damaged." *Caldwell v. Compass Entm't Grp. LLC*, No. 6:14-cv-1701-Orl-41TBS, 2016 WL 7136181, at *2 (M.D. Fla. Feb. 4, 2016). Similarly, a claim for payment by mistake requires a showing that "payments were made under an erroneous belief which was material to a decision to pay." *U.S. ex rel Silva v. VICI Marketing, LLC*, 361 F. Supp. 3d 1245, 1256 (M.D. Fla. 2019).

The Complaint alleges no payment from the government to AIMA itself. Indeed, the government acknowledges that AIMA submitted claims on behalf of Selecta, and that Medicare paid **Selecta** over $2.6 million for the genetic testing services it provided. *See, e.g.*, Compl. ¶ 150. The United States posits, without any further support or detail, that after receiving reimbursement from the government, Selecta "paid AIMA for providing billing services and guidance[.]" *Id.* at ¶ 151. The Complaint contains no other specifics about the financial relationship between AIMA and Selecta, including but not limited to how or when the supposedly unearned funds were transferred to AIMA by Selecta, or what portion of the Medicare reimbursements at issue were ultimately paid to AIMA. In fact, the Complaint does not allege that payments to AIMA from Selecta were related in any way to the purported false claims. Without such allegations, the Complaint fails to demonstrate that AIMA was benefitted—either directly or indirectly—by the

government's payments for ostensibly unnecessary genetic testing, and the claims must be dismissed. *See, e.g.*, *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1348 (M.D. Fla. 2019) (complaint failed to state a claim for unjust enrichment where it did not allege when funds were transferred from the beneficiary to another co-conspirator); *U.S. ex rel. Silva*, 361 F. Supp. 3d at 1257 (dismissing payment by mistake claim against one defendant where there were "no non-conclusory allegations that the mistakenly-paid funds flowed through" that defendant).

## CONCLUSION

For the foregoing reasons, Defendant AIMA Business and Medical Support, LLC respectfully requests that the Court dismiss the Complaint with prejudice, and award any further relief the Court deems just and proper.

Dated:  August 5, 2025                                Respectfully submitted,

*/s/ Jason P. Mehta*
Jason P. Mehta (FBN 106110)
**FOLEY & LARDNER LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210
Primary email: jmehta@foley.com
Secondary email: dmills@foley.com

*Counsel for AIMA Business and Medical Support, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Jason P. Mehta*
Jason P. Mehta