**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-22507-CIV-ALTONAGA/REID**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **AIMA BUSINESS AND MEDICAL SUPPORT, LLC** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**<u>DEFENDANT AIMA BUSINESS AND MEDICAL SUPPORT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Plaintiff United States of America's ("Plaintiff") Opposition (ECF No. 17, "Opposition" or "Opp.") to Defendant AIMA Business and Medical Support, LLC's ("AIMA") Motion to Dismiss (ECF No. 14, "Motion") lays bare the foolishness of Plaintiff's claims against AIMA. The Complaint (ECF No. 1) spends more time discussing the actions of Selecta—the laboratory that allegedly concocted and carried out a scheme to bill the government for genetic testing services that were medically unnecessary—than it does discussing AIMA's involvement. This is because on the face of the Complaint, AIMA did not participate in any part of the supposed scheme other than submitting claims to the government for payment on behalf of Selecta, based on documentation it received from Selecta. Had the government wanted to recover for the claims it alleges it should not have paid, it could have pursued Selecta for its wrongful actions. But where, as here, there are insufficient allegations of AIMA's knowledge of the lack of medical necessity of the claims submitted, the False Claims Act ("FCA") does not provide for liability.

**I. The Government Asks the Court to Accept as True Not Only Factual Allegations, But Also Legal Conclusions.**

According to the government, AIMA is arguing that the allegations in the Complaint are not true, but this is not the case. Instead, as AIMA pointed out in its Motion, conclusory allegations of fact are not accepted as true, and complaints must be dismissed when the claims are "supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Despite the United States' assertions to the contrary, the Complaint asks the Court to accept as true not only factual allegations, but legal conclusions, which is not the standard on a motion to dismiss. *See id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In the Opposition, the government contends that it has adequately plead falsity because it alleged that "AIMA submitted claims for laboratory services that were not medically necessary based on unambiguous language in a federal statute, regulations, and policy determinations and

guidance detailed in LCDs." Opp. at 8. But merely saying that the claims were not medically necessary does not make it so. To survive a motion to dismiss, a claim for the presentment of false claims to the government must adequately allege an "objective falsehood," not a conclusion about which reasonable minds may differ. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F. 3d 370, 376 (4th Cir. 2008) ("[T]he statement or conduct alleged must represent an objective falsehood."); *U.S. ex rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 61, 625-26 (S.D. Ohio 2000) (expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false.); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 335 F.3d 370, 376 (5th Cir. 2004); *U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F.Supp.2d 1329, 1339 (M.D. Ga. 2011).

Here, the government relies on its allegation that patients were not properly evaluated by a physician for medical necessity prior to undergoing the genetic testing. But this does not establish that the claims submitted were not medically necessary. Merely because these patients did not previously have an established treating relationship with a particular physician does not imply that the ordering doctor did not perform any examination of the patient or their medical records and arrive at the independent conclusion that the testing was medically necessary as defined by Medicare. The Complaint fails to establish an objective standard against which to gauge falsity of the claims at issue; in that case, an FCA claim based on the theory that the claims were medically unnecessary cannot survive. *See U.S. v. Prabhu*, 442 F. Supp. 2d 1008, 1032 (D. Utah 2006); *see also Kellogg Brown & Root, Inc.*, 525 F.3d at 377 (reasoning that a relator's "subjective interpretation" regarding the defendant's duties did not rise to the requisite level of falsity); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) ("Expressions of opinion are not actionable as fraud[.]"); *cf. U.S. ex rel. Groat v. Boston Heart Diagnostics*, 255

F. Supp. 3d 13 (D.D.C. 2017) (relator pleaded sufficient facts to support that claims were medically unnecessary where she provided examples of specific claims identified as having certain conditions and explained **why** the tests performed were not medically necessary for that patient).

## II. The Complaint Does Not Adequately Plead AIMA's Knowledge of the Supposed Scheme.

In the Opposition, the government claims that it only needs to state—without more—that AIMA knew of the alleged fraud to satisfy the pleading requirements of Fed. R. Civ. P. 9(b). But that oversimplifies the issue, as even a general allegation of knowledge must still have "indicia of reliability" to support that a defendant knowingly submitted a false claim. *See U.S. ex rel. Butler v. Shikara*, 748 F. Supp. 3d 1277, 1297-98 (S.D. Fla. 2024). "This burden of reliability is not light." *Id.* at 1298. A complaint must at a minimum set forth allegations sufficient to show that a defendant did not commit an "innocent mistake or simple negligence." *Urquilla-Diaz v. Kaplan*, 780 F. 3d 1039, 1058 (11th Cir. 2015). This requires allegations that AIMA failed "to make such inquiry as would be reasonable and prudent" to ensure compliance with the FCA. *See id.* The government has not met its burden where, as here, an established, certified laboratory owned by an individual with an extensive healthcare background submitted documentation to AIMA that was compliant on its face and included orders for tests signed and dated by physicians. There was no reason for AIMA to question the veracity of this documentation, and the government has not pled as much. These allegations do not rise to the level necessary to establish that AIMA acted with anything more than, at best, mere negligence in submitting claims on behalf of Selecta.

When read in full, it is in fact clear that the Complaint does not set forth any knowledge by AIMA of the scheme purportedly run by Selecta. According to the government, AIMA knew that Selecta used call centers to sell screening genetic tests to Medicare beneficiaries who were not

being treated or diagnosed by their treating physicians. *See* Opp. at 8. But the portions of the Complaint the Opposition cites to do not actually support this conclusion.

The Complaint alleges that AIMA relied on LCDs in advising Selecta for requirements for genetic testing—and there is nothing wrongful about relying on LCDs that the government agrees are designed to provide guidance to billers and providers, or about sharing that publicly available guidance with Selecta. Compl. ¶¶ 104-109. It also states that Selecta solicited patients through telemarketing, and that these patients swabbed their DNA prior to having an order from a physician, but the Complaint does not adequately allege that AIMA had knowledge of this arrangement. *See id.* at ¶ 109. The government would have the Court draw that conclusion, but it does not plead sufficient facts to allow the Court to infer AIMA's state of mind rose to the level necessary to sustain an FCA claim. The government states that Selecta discussed these methods with AIMA, but fails to plead who at AIMA had these discussions, whether they occurred via email or some other method, and whether there is any record of such discussions occurring. These unsupported allegations purporting to demonstrate AIMA's knowledge of Selecta's supposed scheme should not be credited.

A single email from September 2018 does not rectify this deficiency. This document—only a portion of which is included in the Complaint—does not say **anything** about how Selecta actually recruited patients, much less include anything to allow the Court to conclude that AIMA knew that any testing was medically unnecessary. *See id.* ¶ 127. Contrary to the government's assertions, this email does not support the conclusion that AIMA somehow knew that patients were not being seen by a treating physician. The document refers explicitly to progress notes, which are generated by providers in connection with a patient encounter, and which alone do not result in any payment to the laboratory. *See id.* On its face, therefore, the email supports that patients were

seen by providers, and merely shows AIMA offering its client advice about how Selecta could comply with the medical necessity requirements. *See id.*

The government points to no other place in the Complaint that supports its assertion that AIMA had the requisite knowledge that the claims it submitted on behalf of Selecta were false. *See generally* Opp. The Complaint fails to set forth AIMA's knowledge and must be dismissed. *See* 31 U.S.C. § 3729(b)(1)(A);

## III. AIMA's Role in the Supposed Scheme Is Insufficient to Find Liability.

The Opposition contends that the government adequately alleged AIMA is liable under the FCA for a scheme admittedly carried out nearly entirely by Selecta. *See* Opp. at 11. In support of this assertion, the government relies on cases that only underscore that it is Selecta, if anyone, that is responsible for the supposedly false claims. *See id.* (citing *U.S. v. Patel*, No. 19-CR-80181-RAR, 2021 WL 2550477 (S.D. Fla. June 22, 2021); *U.S. ex rel. Groat v. Boston Heart Diagnostics*, 255 F. Supp. 3d 13 (D.D.C. 2017); *U.S. v. Berkeley Heartlab, Inc.*, 225 F. Supp. 3d 487 (D.S.C. Mar. 28, 2016)).

In all three of these cases, the defendant was the **laboratory** that performed testing that the government contended was medically unnecessary. *See Patel*, 2021 WL 2550477, at *1 (defendant was owner of laboratory and allegedly paid kickbacks to patient recruiters in exchange for referrals of Medicare beneficiaries for genetic testing); *Groat*, 255 F. Supp. 3d at 18 (laboratory provided doctors with pre-printed test requisition forms); *Berkeley Heartlab*, 225 F. Supp. 3d at 496 (laboratory and its sales and marketing arm allegedly billed federal health care programs for medically unnecessary genetic testing). The defendant laboratory in each case was intimately involved in the details of the schemes at issue and was responsible for creating the scheme, recruiting patients, paying providers, choosing which genetic testing to provide patients, and

creating claim forms. *See, e.g.*, *Patel*, 2021 WL 2550477, at *1-2; *Groat*, 255 F. Supp. 3d at 18; *Berkeley Heartlab*, 225 F. Supp. 3d at 496.

These cases only underscore how attenuated the government's claims against AIMA truly are, as their facts are in stark contrast to AIMA's alleged role in the fraud at issue in the Complaint. The government does not allege that AIMA had any involvement in recruiting patients. *Contra Patel*, 2021 WL 2550477, at *1-2 (defendant knowingly paid patient recruiters in order to receive referrals for patients for genetic testing). It does not allege that AIMA was involved in ordering tests, collecting samples, or interacting with physicians. *Contra Groat*, 255 F. Supp. 3d at 18 (laboratory provided treating physicians with pre-filled requisition forms); *Berkeley Heartlab*, 225 F. Supp. 3d at 496 (laboratory paid physicians a fee for each blood testing referral and encouraged physicians to order unnecessary tests). It does not suggest that AIMA was aware of what Selecta said to any particular patient or provider. *Contra Berkeley Heartlab*, 225 F. Supp. 3d at 496 (laboratory directed physicians as to which tests to order). It does not allege that AIMA changed any bills, medical records, or documentation it received from Selecta. These allegations do not rise to the level necessary to establish that AIMA acted with anything more than, at best, mere negligence in submitting claims on behalf of Selecta.

Further, the government does not even attempt to address the argument that in order for its claims to survive, they must not only be plead with particularity, but must also be plausible. *See* Fed. R. Civ. P. 8(a). As discussed, the Complaint makes clear that AIMA's role in the purported scheme was minimal and was not undertaken with the requisite scienter. But even had the Complaint properly alleged that AIMA had a pivotal role in the supposed wrongdoing, those allegations would not be plausible. It is not believable that AIMA, which had no role in originating patients, contacting patients, working with providers, ordering tests, or creating medical

documentation, somehow participated in a scheme that, as alleged, intimately involved physicians and falsified medical documentation, or that AIMA willingly participated in fraud from which it stood to gain little.

## IV. In the Absence of a Relator, the Government Must Plead the Submission of False Claims with Particularity.

In the Opposition, the government purposely misconstrues AIMA's argument with respect to the necessity of adequately pleading the submission of false claims. The government contends AIMA is argument that there can be on FCA claim without a relator or insider. *See* Opp. at 6 (citing Motion at 7). This is not so. Instead, well-settled law requires a plaintiff plead with particularity "that the United States actually paid a false claim," identified with specificity. *Britton ex rel. U.S. v. Lincare, Inc.*, 634 F. App'x 238, 241 (11th Cir. 2015). There is a limited exception to this requirement that only applies where there is a relator that has personal knowledge of the supposedly false claims. *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.* 591 F. App'x 693, 704-05 (11th Cir. 2014). This exception is undisputedly inapplicable here (*see* Opp. at 5-7), and the government must therefore adequately plead submission of a false claim. *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1315 (11th Cir. 2002). For the reasons set forth in the Motion, the government has not done so here.

## V. The Government Misstates the Complaint's Allegations with Respect to Unjust Enrichment.

The Opposition argues that AIMA received a benefit for its services in the form of payment to Selecta. *See* Opp. at 15 (citing Compl. ¶¶ 101, 151). The government then contends that the "payments from Selecta [to AIMA] resulted from Medicare payments for medically unnecessary genetic tests." *See id.* Tellingly, the government does not cite to the Complaint for this proposition, because it is not actually pled. *See id.*

In reality, the Complaint alleges no payment from the government to AIMA itself. Indeed, the government acknowledges that Medicare paid **Selecta** over $2.6 million for the genetic testing services it provided (*see, e.g.*, Compl. ¶ 150 (emphasis added)) and that Selecta in turn "paid AIMA for providing billing services and guidance" (*see id.* at ¶ 151). The Complaint contains no other specifics about the financial relationship between AIMA and Selecta, including but not limited to how or when the supposedly unearned funds were transferred to AIMA by Selecta, or what portion of the Medicare reimbursements at issue were ultimately paid to AIMA. In fact, the Complaint does not allege that payments to AIMA from Selecta were related in any way to the purported false claims. The Complaint therefore fails to demonstrate that AIMA was benefitted—either directly or indirectly—by the government's payments for ostensibly unnecessary genetic testing, requiring dismissal. *See, e.g.*, *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1348 (M.D. Fla. 2019) (complaint failed to state a claim for unjust enrichment where it did not allege when funds were transferred from the beneficiary to another co-conspirator); *U.S. ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1257 (M.D. Fla. 2019) (dismissing payment by mistake claim against one defendant where there were "no non-conclusory allegations that the mistakenly-paid funds flowed through" that defendant).

For the reasons set forth herein and in the Motion, Defendant AIMA Business and Medical Support, LLC respectfully requests that the Court dismiss the Complaint with prejudice, and award any further relief the Court deems just and proper.

Dated: August 26, 2025

Respectfully submitted,

*/s/ Jason P. Mehta*
Jason P. Mehta (FBN 106110)
**FOLEY & LARDNER LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210
Primary email: jmehta@foley.com
Secondary email: dmills@foley.com

*Counsel for AIMA Business and Medical Support, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Jason P. Mehta*
Jason P. Mehta