UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22507-CIV-ALTONAGA/Reid

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**AIMA BUSINESS AND MEDICAL SUPPORT, LLC**,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, AIMA Business and Medical Support, LLC's Motion to Dismiss Plaintiff's Complaint [ECF No. 14], filed on August 5, 2025. Plaintiff, the United States of America ("the Government") filed a Response [ECF No. 17]; to which Defendant filed a Reply [ECF No. 18]. The Court has reviewed the Complaint [ECF No. 1], the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

This False Claims Act ("FCA") case arises from allegations that Defendant submitted thousands of Medicare claims for genetic laboratory tests that were not medically necessary, not ordered by a treating physician, and not prescribed for the diagnosis or treatment of an illness or injury. (*See generally* Compl.).

Selecta Laboratory ("Selecta") is a Miami-based laboratory. (*See id.* ¶ 15). In May 2018, Selecta changed owners: Richard Luzzi and Jamie Nocher bought the company and became its managers in May 2018, despite having no background in medicine. (*See id.* ¶¶ 65–68). Several months later, in July 2018, Selecta hired Defendant — a business-process outsourcing company

based in the United Kingdom and India — to handle Medicare billing, provide Medicare billing guidance, and keep Selecta updated on Medicare guidelines. (*See id.* ¶¶ 2, 11, 14, 79–81).

Medicare reimburses only for services that are "reasonable and necessary for the diagnosis or treatment of illness or injury[.]" (*Id.* ¶ 53 (quoting 42 U.S.C. § 1395y(a)(1)(A) (alteration added; other citation omitted)). Diagnostic testing is covered only when necessary for such a purpose and ordered by a beneficiary's treating physician. (*See id.* ¶ 56 (citing 42 C.F.R. § 410.32)). Generally, Medicare does not cover genetic tests performed for informational or screening purposes. (*See id.* ¶ 55 (citing 42 C.F.R. § 411.15(a)(1)).

Notwithstanding these restrictions, Defendant sent Luzzi and Nocher sample Explanation of Benefits ("EOBs") for genetic lab testing, indicating Selecta could make a substantial profit by billing Medicare for cancer genomic ("CGx") and pharmacogenomic ("PGx") tests for patients having a personal history of cancer. (*See id.* ¶¶ 80–87, 89). Defendant advised Selecta it could obtain the highest Medicare reimbursements for genetic tests for Lynch syndrome and breast and ovarian cancer. (*See id.* ¶¶ 90, 93 ("If you have noticed, your breast and ovarian panel pays better than multiple cancer panel . . . . It is advisable to request physicians to order breast and ovarian panel if possible." (alteration added; emphasis omitted))).

Following Defendant's advice, Selecta began using telemarketers who did not have medical backgrounds to convince Medicare beneficiaries to undergo CGx and PGx genetic tests that would be "paid for by Medicare" at "no out-of-pocket cost[.]" (*Id.* ¶ 69 (alteration added; quotation marks omitted); *see also* ¶ 70). When beneficiaries agreed to testing, Selecta "sent notaries or agents" to swab them for their DNA "without a doctor's order and with no medical supervision or direction[.]" (*Id.* ¶ 123 (alteration added)). Selecta also retained "telemedicine"

2

doctors, who reviewed and signed the telemarketers' call notes in an electronic portal and signed corresponding Medicare billing forms. (*Id.* ¶ 124 (quotation marks omitted)).

On September 26, 2018, with the telemarketing campaign underway, Luzzi emailed Defendant a link to a Centers for Medicare & Medicaid Services website page adressing Medicare coverage for laboratory services. (*See id.* ¶ 126). Defendant responded the next day, stating:

> The below mentioned link doesn't say anywhere that sample can be collected before the physician visit, but it clearly says that medical necessity documentation when ordering for a laboratory test is essential and it has to be clearly mentioned in the progress notes or signed visit office note, this clearly means that a doctor has to screen the patient and the notes of the doctor should mention the necessity of the Laboratory test, [sic] **In that scenario if the sample was collected earlier and patient goes to a doctor [sic] gets the documents signed later [sic] is completely not logical and illegal.**
>
> **We can suggest 2 ways, i.e. the doctor notes should be on the sample collection date or the notes shouldn't consist of any date information when the doctor did the screening.**

(*Id.* ¶ 127 (emphasis adopted)).

After sending the email, Defendant continued submitting claims to Medicare on behalf of Selecta for genetic testing — reviewing and approving the telemedicine doctors' notes and letters regarding the medical necessity of the genetic tests and submitting bills to Medicare. (*See id.* ¶¶ 111, 130). Defendant's work led to a significant increase in Selecta's Medicare billing. (*See id.* ¶¶ 63–64). Before 2018, Selecta did not bill Medicare for genetic tests and only billed a minimal number of other tests to Medicare. (*See id.* ¶ 63). Between August 22, 2018 and August 13, 2019, Selecta billed Medicare approximately $15,178,946.00 for genetic tests. (*Id.* ¶ 64).

On January 28, 2019, Selecta was notified it had been placed on pre-payment benefit integrity review after an audit indicated an alarming number of Selecta's submissions did not adhere to Medicare's requirements for billing for genetic testing. (*See id.* ¶¶ 133–135). Selecta informed Defendant about the benefits integrity review, and Defendant helped Selecta respond —

while continuing to bill for the same genetic tests, using the same telemarketing practices and doctor-review system. (*See id.* ¶¶ 136–140). Defendant and Selecta also discussed billing for genetic tests in a different Medicare region "that might continue paying for the fraudulent genetic tests" while the review was underway. (*Id.* ¶ 141; *see also id.* ¶ 142).

The Government brings four claims for relief: violation of the FCA, 31 U.S.C. section 3729(a)(1) ("Count I") (*see id.* ¶¶ 164–69); violation of the FCA, 31 U.S.C. section 3729(a)(1)(B) ("Count II") (*see id.* ¶¶ 170–76); and two common-law claims — unjust enrichment and payment by mistake ("Counts III–IV") (*see id.* ¶¶ 177–83). Defendant moves to dismiss the Complaint, arguing that Counts I–II are "shotgun pleadings" that do not meet Federal Rule of Civil Procedure 9(b)'s particularity standard, and each count should be dismissed as insufficiently pleaded under Rule 12(b)(6). (*See generally* Mot.).

## II.  LEGAL STANDARDS

***Rule 12(b)(6).***  "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Twombly*, 550 U.S. at 570). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

**Rule 9(b).** The pleading standards of Federal Rule of Civil Procedure 9(b) apply to actions under the False Claims Act. *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308–09 (11th Cir. 2002). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* (alteration added). To comply with Rule 9(b), a complaint must set forth "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citations omitted). Failure to plead these elements warrants dismissal of a complaint. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

### III. DISCUSSION

The Court begins by addressing Defendant's argument that the Complaint is a shotgun pleading, then analyzes the sufficiency of the allegations to support the FCA claims (Counts I–II) and the common-law claims (Counts III–IV).

**A. Shotgun Pleading**

Defendant argues that the Complaint is a shotgun pleading — and violates Rule 9(b) — because it "inappropriately lumps" Defendant and Selecta together without specifying which "defendant" is responsible for which actions. (Mot. 8–9 (citations omitted));[1] *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–23 (11th Cir. 2015) (listing four types of complaints that are impermissible "shotgun pleadings" under Federal Rule of Civil Procedure 8(a)(2) or 10(b), including pleadings that assert "claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" (footnote call number and citations omitted)).

This argument lacks merit. As Defendant acknowledges, there is only one named defendant here (*see* Mot. 9) — and Defendant provides no support for classifying a complaint as a shotgun pleading for intermingling defendants when only one is named (*see generally id.*). The Complaint is also sufficiently specific about Defendant's conduct to provide it with notice. (*See* Compl. ¶ 94 (alleging Defendant advised Selecta to tell ordering physicians to select genetic tests based on profit over necessity); ¶ 111 (alleging Defendant "reviewed sham doctors' notes and letters written to support the alleged medical necessity of the genetic tests"); ¶ 128 (alleging Defendant suggested ways for Selecta to hide the fraud)).

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

### B. Counts I & II (FCA Claims)

***Presentation of False Claims (Count I).*** To state a claim under 31 U.S.C. section 3729(a)(1)(A), the Government must allege Defendant (1) presented a false or fraudulent claim, or caused one to be presented, (2) for payment or approval, (3) with knowledge it was false. *See id.*; *see also Sapssov v. Health Mgmt. Assocs, Inc.*, 22 F. Supp. 3d 1210, 1226 (M.D. Fla. May 21, 2024) (citation omitted). Defendant argues Count I must be dismissed because the Government fails to identify with particularly any false claim submitted and paid for by the Government, fails to plead falsity, and fails to plead scienter. (*See* Mot. 9). The Court addresses each argument in turn.

### i. Particularity

To satisfy Rule 9(b), a FCA complaint "must allege the actual presentment of a claim . . . with particularity, meaning particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the Government." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015) (quotation marks and citations omitted). A plaintiff may satisfy this standard by "[p]roviding exact billing data — name, date, amount, and services rendered — or attaching a representative sample claim[.]" *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014) (alterations added; citation omitted). There is no per se rule that a FCA complaint must provide exact billing data; rather, the complaint must contain "some indicia of reliability" that a false claim was submitted. *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (citation omitted).

Defendant asserts the Government fails to identify with particularity a false claim submitted to and paid by the Government, relying on *United States ex rel. Clausen v. Lab. Corp. of America* for the proposition that the Eleventh Circuit requires copies of submitted bills or claims.

7

(*See* Mot. 10–12). This argument misreads *Clausen* and overstates Plaintiff's pleading burden. The court in *Clausen* emphasized that while certain billing details may support Rule 9(b) particularity, copies of bills and claims are not mandatory in every case. *See* 290 F.3d at 1312 n.21. In *Clausen*, the relator offered only a blank claim form and patient test lists, without any information linking the alleged scheme to the submission of bills or claims. *See id.* at 1306, 1313.

Unlike the pleading in *Clausen*, the Complaint contains sample Medicare claims for various patients which list: the beneficiary's initials, the claim submission date, the claim paid date, the procedure code, a genetic testing description, the amount billed, and the amount paid to the provider. (*See id.* ¶¶ 154–163). These allegations meet Rule 9(b)'s particularity requirements for the actual presentment of false claims.

### ii. Falsity

Defendant next argues that the Government fails to properly plead that any claims submitted for payment were false. (*See* Mot. 12). The Court disagrees.

Viewing the allegations in the light most favorable to the Government, the Complaint alleges that Defendant "assisted Selecta in developing its genetic testing panels based on how lucrative each panel was" as opposed to what tests were medically necessary (Compl. ¶ 99, *see also id.* ¶¶ 93–95); and "reviewed sham doctors' notes and letters written to support the alleged medical necessity of the genetic tests" despite knowing the telemedicine doctors did not have a treating relationship with the beneficiaries (*id.* ¶ 111; *see also* ¶¶ 109, 112). The Government also alleges Defendant knew the genetic testing occurred before the beneficiaries consulted a doctor. (*See id.* ¶¶ 125–127). Under these circumstances, the Government has adequately alleged falsity.

### *iii. Scienter*

Defendant further contends that the Government fails to plead scienter. (*See* Mot. 15–17). The FCA defines the terms "knowing" and "knowingly" as having "actual knowledge of the information;" acting "in deliberate ignorance of the truth or falsity of the information;" or acting "in reckless disregard of the truth or falsity of the information[.]" 31 U.S.C. § 3729(b)(1)(A) (alteration added). Proof of the specific intent to defraud is not required to establish knowledge under the statute. *See id.* § 3729(b)(1)(B). And "[a]t the pleading stage, 'knowledge, and other conditions of a person's mind may be alleged generally.'" *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012) (quoting Fed. R. Civ. P. 9(b); alteration added).

Here, the Complaint contains sufficient allegations of Defendant's scienter. Plaintiff alleges Defendant knew Selecta was collecting genetic samples from patients prior to receiving a doctor's authorization, in direct violation of Medicare's rules for coverage of laboratory services. (*See* Compl. ¶¶ 125–26; *see also id.* ¶ 127 (describing Selecta's current practices as "not logical and illegal")). Defendant was further aware that Selecta ordered tests that were not medically necessary, in direct violation of known Medicare policies. (*See id.* ¶¶ 109, 129). Despite this knowledge, Defendant continued submitting requests to Selecta and even provided options to help Selecta circumvent Medicare's policies. (*See id.* ¶¶ 127, 129). These allegations sufficiently imply knowledge under 31 U.S.C. section 3729(b)(1)(A).

**Causing to be Made or Used False Records or Statements (Count II).** The Government brings a claim under 31 U.S.C. section 3729(a)(1)(B), alleging Defendant "knowingly caused to be made or used a false record or statement material to a false or fraudulent claim[.]" (Compl. ¶ 171 (citing 31 U.S.C. § 3729(a)(1)(B); alteration added)). To establish a cause of action under this

9

provision, a plaintiff must allege (1) defendant made, used, or caused to be made, a false statement; (2) the defendant knew the statement was false; and (3) the statement was material to the false claim. *See United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155 (11th Cir. 2017) (citing 31 U.S.C. § 3729(a)(1)(B)).

Defendant seeks dismissal of Count II, regurgitating its previous arguments that the Government fails "to establish submission of a false claim" (Mot. 18–19) and "fails to adequately plead the scienter requirement" (*id.* 19). Given that Count II incorporates the same facts that support Count I, the Court's prior conclusion that Plaintiff alleges facts that satisfy Rule 9(b) equally applies here.

Defendant also argues that Plaintiff "fails to state who made the false statements, who falsified the records, when the statements were made, how the representation was falsified, or how . . . [Defendant] was involved in the alleged falsification." (Mot. 18 (alterations added)). This argument is unavailing. Plaintiff alleges Defendant "advised Selecta to tell ordering physicians to choose genetic tests" based on profit over medical necessity (*id.* ¶ 94); helped with the negotiation of audited claims (*see id.* ¶ 102); "reviewed sham doctors' notes and letters written to support the alleged medical necessity of the genetic tests" (*id.* ¶ 111); and "gave its approval to bill Medicare[] and submitted the bills for the genetic testing" (*id.* (alteration added)). The Government's sample Medicare beneficiary claims also contain specific dates, showing when Defendant, Selecta's sole billing company, submitted the allegedly false claims. (*See id.* ¶¶ 154–163; *see also id.* ¶ 22 ("AIMA was the sole billing company that advised Selecta and submitted claims to Medicare for genetic tests on behalf of Selecta during the relevant time period.")).

In sum, the Government adequately alleges in Count II Defendant's participation in the creation of the allegedly false statements.

### C. Counts III & IV (Common Law Claims)

Defendant next asserts that Plaintiff's common-law claims — for unjust enrichment and payment by mistake — should be dismissed because the factual allegations are insufficient. (*See* Mot. 20–22). Defendant contends that aside from a few paragraphs (*see id.* 20 (citing Compl. ¶¶ 177–179; 180–183)), "[t]here are no further details or facts supporting" Counts III and IV (Mot. 20 (alteration added)). Both counts incorporate by reference paragraphs 1–163 of the Complaint (*see* Compl. ¶¶ 177, 180), and the Government insists because its common-law claims are pleaded in the alternative, it may rely on the same operative facts as those which support its FCA claims. (*See* Resp. 14 (citing *United States v. Adams*, 371 F. Supp. 3d 1195, 1216 (N.D. Ga. 2019))). Again, here, the Government has the better argument.

***Unjust Enrichment (Count III).*** To plead an unjust enrichment claim under federal common law, the Government must allege "(1) a benefit was conferred[;] (2) the recipient was aware that a benefit was received[;] and[] (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1266 (S.D. Fla. 2024) (citation and quotation marks omitted; alterations added). [2]

The Government alleges Defendant was unjustly enriched because it obtained funds it was not entitled to for genetic tests that were not medically necessary nor ordered by the patients' treating physicians. (*See* Compl. ¶¶ 178–179). Defendant argues the claim must be dismissed

---

[2] Defendant analyzes the sufficiency of Count III under Florida law (*see* Mot. 21) while the Government relies on federal common law in pleading Counts III and IV (*see* Resp. 15). Because the "common-law claims involve rights of the United States under a nationwide federal program, federal common law governs." *United States v. Marder*, 208 F. Supp. 3d 1296, 1318 (S.D. Fla. 2016) (citing *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979), and *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 366–67 (1943)).

because the Government alleges no payment from the Government directly to Defendant itself (*see* Mot. 21) and maintains that the Government must show it directly conferred a benefit on Defendant (*see id.* (citation omitted)).  Not so.

Federal common law, unlike Florida law,[3] does not require the government to allege that it conferred a benefit directly upon a defendant to plead a claim for unjust enrichment.  *See United States ex rel. Borges v. Doctor's Care Med. Ctr.*, No 01-8812-Civ, 2007 WL 9702639, at *17 (S.D. Fla. Jan. 29, 2007).  "Under either a payment by mistake or unjust enrichment theory, the Government may seek repayment from any third parties to whom the funds flowed, not just the party to which they were directly given."  *United States ex rel. Herbold v. Dr.'s Choice Home Care, Inc.*, No. 15-cv-1044, 2019 WL 5653459, at *16 (M.D. Fla. Oct. 31, 2019) (citation and quotation marks omitted).

The Complaint contains sufficient allegations that funds flowed to Defendant through Selecta because of the parties' business arrangement.  (*See, e.g.*, Compl. ¶ 15 ("Selecta hired [Defendant] to advise Selecta and to submit bills to Medicare on Selecta's behalf" (alteration added)); ¶ 61 ("[Defendant] billed Medicare on Selecta's behalf" (alteration added)); ¶ 64 ("Selecta, with help from [Defendant], billed Medicare . . . for genetic tests." (alterations added)); ¶ 151 ("Selecta paid [Defendant] for provided billing services and guidance so that Selecta could continue billing Medicare." (alteration added)).  As a result, the Government sufficiently pleads an unjust enrichment claim in Count III.

---

[3] To state a claim for unjust enrichment under Florida law, a plaintiff must show: (1) it has conferred a benefit on defendant; (2) defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for defendant to retain the benefit without paying the value.  *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citation omitted).  Defendant's cited cases in support of its unjust enrichment arguments apply Florida law and are thus inapplicable.  (*See* Mot. 21 (citing *Virgilio*, 680 F.3d at 1337; *Harvey v. Fla. Health Scis. Ctr., Inc.*, 728 F. App'x 937, 946 (11th Cir. 2018); *Caldwell v. Compass Ent. Grp. LLC*, No. 14-cv-1701, 2016 WL 7136181, at *2 (M.D. Fla. Feb. 4, 2016))).

***Payment By Mistake (Count IV).*** Finally, Defendant argues the Government's payment-by-mistake claim should be dismissed because there are no non-conclusory allegations that the Government paid Defendant. (*See* Mot. 20–22). "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid." *United States ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1256 (M.D. Fla. 2019) (citations and quotation marks omitted). The Government prevails on a claim of payment by mistake by showing its payments were made "under an erroneous belief which was material to the decision to pay." *Id.* (citations and quotation marks omitted). As stated, under a payment-by-mistake theory, "the Government may seek repayment from any third parties to whom the funds flowed, not just the party to which they were directly given." *United States ex rel. Herbold*, 2019 WL 5653459, at *16 (citation and quotation marks omitted).

The Court once again finds that the Government sufficiently alleges that funds flowed to Defendant through Selecta under the parties' business arrangement.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, AIMA Business and Medical Support, LLC's Motion to Dismiss Plaintiff's Complaint **[ECF No. 14]** is **DENIED**. Defendant shall respond to Plaintiff's Complaint [ECF No. 1] by **October 1, 2025**.

**DONE AND ORDERED** in Miami, Florida, this 17th day of September, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record